UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RONALD HUTCHINSON,<br><br>    Plaintiff,<br><br>    v.<br><br>TOWN OF GREENE<br>and JOHN SOUCY<br><br>    Defendants. | Civil Action No. |

COMPLAINT
JURY TRIAL REQUESTED
INJUNCTIVE RELIEF REQUESTED

NOW COMES the Plaintiff, Ronald Hutchinson ("Mr. Hutchinson"), by and through undersigned counsel, and complains against the Defendants, Town of Greene and John Soucy, as follows:

INTRODUCTION

Elected officials and government employees are public servants entrusted by the people with powers that must be exercised solely for the public good. This case concerns a local elected official and government employee who abused the authority of his office by using Town resources for personal gain, directing Town employees to engage in unlawful and unsafe conduct for their own benefit, and using the power of the office to act out on their personal grudges and grievances, namely, retaliating against the Plaintiff for reporting and opposing these improper actions. This abuse of power violates the United States Constitution and State civil rights laws.

1

## JURISDICTION AND PARTIES

1. This action arises under the Maine Whistleblowers' Protection Act ("MWPA"), 26 M.R.S. §§831 *et seq.*, as enforced through the Maine Human Rights Act ("MHRA"), 5 M.R.S. §§ 4551 *et seq.*; and 42 U.S.C. §1983 ("Section 1983").

2. Mr. Hutchinson is a United States citizen residing in the Town of Greene, County of Androscoggin, State of Maine.

3. Mr. Soucy is a United States citizen residing in the Town of Greene, County of Androscoggin, State of Maine.

4. The Fire Department is a volunteer fire department. Participation is voluntary for the Fire Department and employees are paid per call. Only Chiefs and Assistant Chiefs are paid a yearly stipend.

5. The Fire Department is overseen by the Town of Greene, particularly the Town of Greene select board.

6. According to the Town of Greene's submission to the Maine Human Rights Commission, the Town of Greene was Mr. Hutchinson's nominal employer.

7. The Town of Greene had 25 or more employees during the time that the alleged retaliation occurred.

8. This Court has subject matter jurisdiction over Mr. Hutchinson's federal and state claims pursuant to 28 U.S.C. §§ 1331 and 1367.

9. On or about May 20, 2024, Mr. Hutchinson filed a timely Complaint/Charge of Discrimination against the Fire Department alleging unlawful retaliation and whistleblower retaliation with the Maine Human Rights Commission ("MHRC").

10. On or about September 26, 2024, Mr. Hutchinson filed a timely Amended Charge of Discrimination with the MHRC adding the Town of Greene as a Respondent.

11. On or about June 13, 2025, the MHRC issued a Notice of Right to Sue with respect to Mr. Hutchinson's state law claims.

12. Mr. Hutchinson has exhausted his administrative remedies with respect to all claims set forth in this Complaint requiring administrative exhaustion.

## JURY TRIAL REQUESTED

13. Mr. Hutchinson requests a trial by jury for all claims and issues for which a jury is permitted.

## FACTUAL ALLEGATIONS

14. Mr. Hutchinson worked for the Town of Greene ("Greene") for more than nine years before he was wrongfully terminated on March 21, 2024.

15. John Soucy is the Fire Chief and a Town of Greene Selectman.

16. Phil Lavoie is the Assistant Fire Chief.

17. George Farris is the Rescue Chief.

18. Benjamin Westman is a Lieutenant.

19. Mr. Hutchinson was hired by Greene in August 2016 and worked there until his termination on March 21, 2024.

20. Most recently, Mr. Hutchinson worked for Greene as Assistant Rescue Chief.

21. Mr. Hutchinson performed his job in a satisfactory manner during the nine years of his employment.

22. Mr. Hutchinson earned $13.25 per hour, plus a stipend.

23. Greene has a non-transporting Emergency Medical Services ("EMS") license, meaning that they are not permitted to transport patients in their ambulance. They respond to emergency calls, but contract another EMS service to transport their patients.

24. On March 12, 2024, Mr. Hutchinson was informed by one of his subordinates that Mr. Soucy had directed Mr. Farris and another employee to use the Fire Department ambulance to pick up Mr. Soucy's aunt from Central Maine Medical Center and transport her to her home.

25. Transporting a patient is in violation of the Fire Department's non-transporting EMS License, which is regulated by the Maine Board of Emergency Medical Services.

26. This violates Maine law 32 M.R.S. §86(1).

27. Mr. Hutchinson correctly believed that transporting a patient was illegal and his belief was reasonable.

28. During this transport, Mr. Farris had left the patient unattended in the back of the ambulance which is illegal.

29. 32 M.R.S. §86(2)(B) provides that during a patient transport from a hospital, the person must be cared for by someone who is appropriately trained to do so and the qualified professional must accompany the patient in the portion of the ambulance where the patient rides.

30. Mr. Hutchinson correctly believed that failing to attend to a patient during transport is illegal and his belief was reasonable.

31. Failing to attend to the patient during the transport also endangered the health and safety of the patient and deviated from the applicable standard of patient care.

32. Mr. Hutchinson correctly believed that failing to attend to a patient during transport endangered the health and safety of the patient and his belief was reasonable.

33. After this transport, Mr. Soucy and Mr. Farris did not complete a patient care report. Mr. Hutchinson was aware that they had not filed a report because he had access to the report-writing software and checked to see if a report had been generated.

34. Failing to file a patient care report is a violation of the Maine Board of EMS Rules and is illegal.

35. Chapter 3, §9 of Maine Emergency Medical Services System Rules requires that a patient care report be submitted within 24 hours of each service provided.

36. Mr. Hutchinson correctly believed that failing to file a report was illegal and his belief was reasonable.

37. After being made aware of these violations, Mr. Hutchinson was concerned that the Fire Department's EMS license would be revoked. He knew that this trip had put the patient's safety in jeopardy, and that it had violated the law.

38. On March 14, 2024, Mr. Hutchinson contacted the State of Maine Board of Emergency Medical Services to file a report about this illegal transport. The State then launched an investigation.

39. Mr. Hutchinson's report to the State regarding a matter he reasonably believed was a violation of law, which endangered the health and safety of a patient, and which deviated from the applicable standard of patient care, constituted protected activity for purposes of the MWPA.

40. Mr. Hutchinson's report to the State was a report on a matter of public concern and importance and was protected speech for purposes of 42 U.S.C. § 1983.

41. Mr. Hutchinson made the report to the State because he wanted to shed light on the matter and ensure that it was addressed and did not happen again.

42. Mr. Hutchinson contacted the State because he had approached Mr. Soucy, Mr. Farris, and Mr. Lavoie about issues in the past and been ignored.

43. Issues that Mr. Hutchinson had reported in the past included Mr. Soucy, Jim Philips and Riley Laverdiere utilizing the Fire Department boat to retrieve a stranded boater in Sabattus Pond without calling 911 or dispatching the Sabattus Fire Department first, as well as Mr. Soucy directing Mr. Farris to visit Mr. Soucy's aunt's house to "assess whether or not she was ok" without it being in response to an emergency call. In each of these instances, Mr. Hutchinson's reported concerns about the illegal activities were ignored.

44. Mr. Soucy asked Mr. Farris to assist him with the illegal transport. Mr. Soucy and Mr. Farris are the highest-ranking employees at the Fire Department and would have been the proper people to receive a report on the matter. Had Mr. Hutchinson reported his concerns to Mr. Soucy and Mr. Farris, he would have been reporting them to themselves.

45. Reporting to Mr. Soucy and Mr. Farris about their own unlawful and unsafe activities made no sense and would not have been appropriate.

46. Mr. Soucy, in addition to being Fire Chief, is the Chairman of the Town of Greene Select Board.

47. The select board oversees the Fire Department.

48. Mr. Hutchinson did not bring his concerns to Mr. Farris and Mr. Soucy because on multiple occasions he witnessed Mr. Farris strike or slap employees who he perceived to be questioning his authority. This physical aggression has been reported to Mr. Soucy multiple times by various employees but has not been addressed.

49. Because Mr. Hutchinson had reported illegal actions to the Fire Department in the past, and had been ignored, and because he would be reporting the violations to the violators, Mr. Hutchinson knew that reporting the issues to his employer would be futile.

50. On March 17, 2024, the State notified the Fire Department that they were under investigation via certified letter.

51. On March 17, 2024, Mr. Soucy's wife tagged Mr. Hutchinson in a Facebook post claiming that he had ruined her and Mr. Soucy's lives.

52. On March 19, 2024, Mr. Hutchinson arrived at the Fire Department to attend the weekly safety meeting.

53. Before the safety meeting, Mr. Lavoie called Mr. Hutchinson into a meeting with himself, Mr. Soucy, and Mr. Farris. Mr. Hutchinson was informed that they were "doing away with" the Assistant Rescue Chief position and that he was being demoted.

54. When Mr. Hutchinson asked for an explanation for his demotion, he was told that it was for bringing gym equipment to the station and for allegedly going outside of the chain of command after an incident with a civilian.

55. There is no record of any disciplinary action taken against Mr. Hutchinson prior to his termination. He did not receive any progressive discipline as is outlined by the Greene Fire Department employee handbook.

56. Mr. Hutchinson had built a home gym in the station in 2020, during Covid, for all employees to use. He donated this equipment.

57. There had also been a standing order for the past four years that all employees should bring any unneeded gym equipment to the station. Many employees have donated gym equipment to the Fire Department over the past four years including Mr. Farris, Mr. Westman,

Bob Beaupre, Darian Nadeau, Chris Miller, Erica Guay, James Simones, Barry Beauchesne, and Dustin Barry.

58. To the best of Mr. Hutchinson's knowledge, no other employee was reprimanded for donating gym equipment or "storing personal property at the station".

59. Mr. Soucy himself frequently stored his personal boat at the fire station and had permitted his son to store his snowmobile and vehicle at the station.

60. On or around December 12, 2023, Mr. Hutchinson had responded to an emergency call about a propane delivery truck overfilling the propane tank at a house. There was the potential for a big explosion, so Mr. Hutchinson was working to evacuate two elderly residents.

61. During this emergency, Mr. Hutchinson's vehicle was blocking the road. Mark Randall, a dump truck driver and a town selectman, began yelling at Mr. Hutchinson and threatening assault if he did not move his vehicle.

62. Mr. Hutchinson was not able to leave the patients he was caring for to move his vehicle. Leaving the patients would not have been appropriate care. Had he left the patients, he could have lost his EMT license due to patient abandonment.

63. Sheriff Deputy Chris Miller arrived at the scene, but Mr. Hutchinson told him that he did not want to pursue any charges against Mr. Randall.

64. Mr. Hutchinson reported this incident to Mr. Soucy, but Mr. Soucy did not address the issue. Mr. Hutchinson then wrote a letter to Town Manager Carol Buzzell informing her of Mr. Randall's inappropriate behavior.

65. Mr. Hutchinson's report to Mr. Soucy and letter to Ms. Buzzell were protected reports for purposes of the MWPA where he reported in good faith what he reasonably believed to be violations of law and conduct which endangered health and safety.

66. Mr. Hutchinson's report to Mr. Soucy and letter to Ms. Buzzell were reports on a matter of public concern and importance and was protected speech for purposes of 42 U.S.C. § 1983.

67. Mr. Hutchinson reported the incident to Mr. Soucy and wrote the letter to Ms. Buzzell because he was concerned that Mr. Randall (a town selectman) had threatened and verbally accosted a first responder, because he thought that this was behavior unbefitting of a town official and illegal, and because he wanted to shed light on the matter and prevent it from happening in the future.

68. During the March 19, 2024, meeting, Mr. Soucy informed Mr. Hutchinson that having made the report to the Town Manager regarding Mr. Randall's behavior was one of the reasons for his demotion. He also told Mr. Hutchinson that he had "made [Mr. Randall] look like an asshole" by making this report and that he "wasn't going to do anything about the complaint anyway".

69. The stated reasons for Mr. Hutchinson's demotion are direct evidence of MWPA retaliation and violation of Mr. Hutchinson's constitutional right to free speech.  The stated reasons also demonstrate a pretextual effort to dissemble the facts that Mr. Hutchinson was demoted for reporting the illegal transport to the State.

70. During the March 19, 2024, meeting, Mr. Soucy also claimed that Mr. Hutchinson had given away extraction tools including a hydraulic pump, spreaders, and Indian Packs to the Town of New Sharon without permission.

9

71. On October 31, 2023, Mr. Hutchinson and Mr. Soucy discussed donating these items and decided to vote on it at the next officers' meeting.

72. In December 2023, Mr. Hutchinson, Mr. Soucy, Mr. Lavoie, and Mr. Farris met at Legend's Bar and Grill. The officers voted to donate the equipment to the New Sharon Fire Department.

73. Mr. Hutchinson had not acted without permission but rather had carried out a plan enacted by all the leaders of the Fire Department.

74. This excuse by Mr. Soucy is clear evidence of pretext and an effort by Mr. Soucy to use false reasons to cover up the retaliatory motivation for the demotion.

75. Mr. Soucy demoted Mr. Hutchinson only two days after becoming aware of the protected report made to the State.

76. Mr. Soucy knew that Mr. Hutchinson had made the report, as reflected by the Facebook post made by Mr. Soucy's wife and the information given to Mr. Hutchinson by Mr. Westman (discussed below).

77. After this March 19, 2024 meeting, Mr. Hutchinson began removing the gym equipment that he had brought to the station.

78. Mr. Hutchinson removed the gym equipment to follow orders and comply with leadership by remedying the violation he had allegedly committed.

79. On March 20, 2024, Mr. Westman informed Mr. Hutchinson that Mr. Soucy, Mr. Farris, and Mr. Lavoie had discussed their plans to "deal with him" for making a report to the State.

80. From Mr. Westman's statement, it is clear that while the report was anonymous, Mr. Soucy, Mr. Farris, and Mr. Lavoie were aware that Mr. Hutchinson was the person who had contacted the State.

81. After being demoted, Mr. Hutchinson planned to remain a member of the Fire Department as an EMT. He returned his bunker gear because he did not need it to respond to EMS calls (bunker gear is only worn when responding to fire calls).

82. On March 21, 2024, Mr. Hutchinson's access to the Fire Department was revoked. He could no longer enter the fire station and he no longer received emergency calls.

83. Members of the Fire Department are alerted to emergency calls in one of three ways; a phone application called "iamresponding", an individual text message sent from Dispatch, and a radio tone played via the Greene fire channel.

84. Mr. Hutchinson became aware of his termination when he heard the emergency tone through his radio, but did not receive a notification from "iamresponding" or a text message from Dispatch.

85. After realizing that he had not been notified about an emergency call, Mr. Hutchinson contacted his coworker, Andrew Primavera, and asked if he had received any notifications of an emergency. Mr. Primavera had received the notification as normal.

86. Mr. Hutchinson then contacted a friend who is a Dispatcher for Androscoggin County, who confirmed that Mr. Hutchinson had been removed from all access to the Greene response system. Mr. Hutchinson had also been removed from the EMS report writing software (MEFIRS).

87. Mr. Hutchinson's termination was never discussed with him. He was not informed that his access to the Fire Department would be revoked prior to it happening.

88. In September 2024, the Greene Fire Department Rescue entered into a Consent Agreement with the State of Maine Emergency Medical Board.

89. A true and accurate copy of the Consent Agreement is attached hereto as Exhibit A.

90. The Consent Agreement was signed by Mr. Soucy.

91. The Consent Agreement states that "GFDR (Green Fire Department Rescue) admits to the Facts as stated above and admits that the Facts constitute a basis for the Board to impose discipline against its license as follows".

92. Therefore, by executing the Agreement, Mr. Soucy was admitting that all of the Facts set out in the Consent Agreement were true.

93. The Facts section of the Consent Agreement states, among other things, "On March 10, 2024, GFDR transported a patient, who is a family member of the Chief of GFDR, from Central Maine Medical Center in Lewiston, Maine to the patient's home in Greene, Maine in an ambulance that is not licensed by the Board."

94. The Consent Agreement also indicates in the Facts section that, "On March 15, 2024 Maine EMS filed a complaint against GFDR's license with the Board, which was docketed as Case No., 24-339, alleging, among other things, that GFDR had transported a patient in an unlicensed ambulance."

95. Mr. Soucy agreed on behalf of Greene Fire Department Rescue that the Facts set out in the Consent Agreement constituted a basis for the Board to impose the following discipline against Greene Fire Department Rescue as follows:

96. "Pursuant to 32 M.R.S. Sec. 90-A(5)(H) for violating Board Rules, Chapter 3 Sec. 11(1) which provides, "Except as otherwise exempted by 32 M.R.S. Sec. 82 no vehicle shall be

operated as an ambulance (from within Maine) or emergency medical services vehicle unless it is licensed and authorized in accordance with these Rules."

97. "Pursuant to 32 M.R.S. Sec. 90-A(5)(F) for violating a reasonable standard of professional behavior that has been established in the practice of emergency medical services, specifically for engaging in unprofessional conduct as defined by Board Rules, Chapter 11 Sec. 1(26) by operating an ambulance or EMS vehicle that is not licensed or authorized by the Board."

98. By executing the Consent Agreement, Mr. Soucy agreed that Greene Fire Department Rescue would receive a warning against its license for its violations of these Rules.

99. The Consent Agreement reflects that the conduct reported by Mr. Hutchinson did, in fact occur, and was, in fact, a violation of the law.

100. Mr. Soucy was a decision-maker with regard to the decision to terminate Mr. Hutchinson and no longer call him for emergency calls.

101. Mr. Hutchinson was terminated from performing any work for the Town in retaliation for his protected reports.

102. Mr. Soucy and Greene acted under the color of law when they demoted Mr. Hutchinson and terminated him from performing any work for the Town.

103. Prior to his demotion, Mr. Hutchinson had not received any disciplinary action. He was not given any progressive discipline prior to his termination, as is outlined in the Disciplinary Procedure for Town of Greene Personnel.

104. In addition to causing Mr. Hutchinson economic damages, Defendants' retaliation has caused Mr. Hutchinson substantial stress, humiliation, and other non-economic damages.

## COUNT I: MWPA/MHRA Retaliation

105. Paragraphs 1-104 are incorporated by reference.

106. Defendant Town of Greene's conduct violated the MWPA by retaliating against Plaintiff because he engaged in protected activity under the MWPA, as enforced through the MHRA.

## COUNT II – Section 1983

107. Paragraphs 1 – 106 are incorporated by reference.

108. The First Amendment to the United States Constitution gives persons a right to freedom of speech and to petition the Government for redress of grievances. 1st Am Const.

109. The First Amendment prohibits retaliation by a government for an individual exercising protected expressions of speech, association, and the right to petition.

110. Government employees have a limited right to engage in free speech of matters of public concern or importance, and government employers are prohibited from retaliating against their employees for exercising this right.

111. All of Mr. Hutchinson's reports were matters of public concern.

112. The rights granted by the United States Constitution are enforced through Section 1983, which states, in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…" 42 U.S.C. § 1983.

113. Moreover, "to act 'under color of' state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint

action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions. *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970); *United States v. Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 1156, 16 L.Ed.2d 267 (1966)).

114. Defendants demoted and then terminated Plaintiff's employment.

115. Fire Chief and Selectman John Soucy, who has final policymaking authority, decided to demote and terminate Plaintiff's employment and followed through on this decision.

116. Defendants, acting under the color of law, violated Plaintiff's First Amendment right to free speech and the right to petition the government when it demoted and terminated Plaintiff.

117. By terminating Plaintiff for engaging in constitutionally-protected speech and engaging in petitioning activity, Defendants have violated Plaintiff's right under the First Amendment to the United States Constitution as enforced through 42 U.S.C. § 1983.

118. Defendants are further liable for retaliation against Plaintiff because Defendants have a custom or policy of retaliating against employees or private individuals who engage in constitutionally protected speech and petitioning activity and did in fact retaliate against Plaintiff for his speech and petitioning the government.

119. Defendants' practice of retaliating against employees engaging in constitutionally-protected petitioning activity is so well settled and widespread that the policymaking officials of the municipality either have actual or constructive knowledge of it yet did nothing to end the practice.

120. Where John Soucy engaged in the retaliation and is also a Town Selectman it is clear that the Town had actual knowledge of the retaliation.

121. Plaintiff seeks injunctive relief and all compensatory, punitive, and economic damages available under the law, including attorneys' fees and costs, in an amount to be determined at trial.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court grant the following relief:

A. Declare the conduct engaged in by Defendants to be in violation of his rights;

B. Enjoin Defendants, their agents, successors, employees, and those acting in concert with it from continuing to violate his rights;

C. Order Defendants to reinstate Plaintiff or award front pay to Plaintiff;

D. Award lost future earnings to compensate Plaintiff for the diminution in expected earnings caused by Defendants' retaliation;

E. Award equitable-relief for back pay, benefits and prejudgment interest;

F. Award compensatory damages in an amount to be determined at trial;

G. Award punitive damages against John Soucy in an amount to be determined at trial;

H. Award nominal damages;

I. Award attorneys' fees, including legal expenses, and costs;

J. Award prejudgment interest;

K. Require Defendants to mail a letter to all employees notifying them of the verdict against them and stating that Defendants will not tolerate discrimination in the future;

  L. Require that Defendants post a notice in all of their workplaces of the verdict and a copy of the Court's order for injunctive relief;

  M. Require that Defendants train all management level employees on the protections afforded by the MWPA and 42 U.S.C. Sec. 1983;

  N. Require that Defendants place a document in Plaintiff's personnel file which explains that Defendants unlawfully terminated him because of unlawful discrimination and retaliation; and

  O. Grant to Plaintiff such other and further relief as may be just and proper.


Dated: June 27, 2025

/s/ Chad T. Hansen
Chad T. Hansen
Attorney for the Plaintiff

EMPLOYEE RIGHTS GROUP
92 Exchange Street 2nd floor
Portland, Maine 04101
Tel. (207) 874-0905
Fax (207) 874-0343
Chad@EmployeeRightsLaw.Attorney